## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION
## No. 5:12-CV-660-F

| | |
|---|---|
| WANDA WILSON, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| | ) **ORDER** |
| v. | ) |
| | ) |
| ELRAC, INC., ELRAC, LLC, | ) |
| THE GOODYEAR TIRE & RUBBER | ) |
| COMPANY D/B/A JUST TIRES, | ) |
| | ) |
| | ) |
| Defendants. | ) |

This matter is before the court on the Motions for Summary Judgment [DE-37; DE-41] filed

by Defendants ELRAC, LLC ("Enterprise")[1] and The Goodyear Tire & Rubber Company d/b/a Just

Tires ("Just Tires"). Also pending before the court are Enterprise's Motions for Sanctions [DE-44;

DE-56] and Just Tires' Motion for Sanctions [DE-58]. For the reasons stated below, the motions

are ALLOWED, and this case is DISMISSED.

## I. RELEVANT PROCEDURAL HISTORY

Plaintiff, represented by counsel, initiated this action in September 2012, seeking damages

for injuries she allegedly sustained when driving a vehicle she rented from Enterprise and asserting

the following claims: (1) "breach of contract/breach of warranty" against "defendants;" (2) a

---

[1] Defendant ELRAC, LLC represents that ELRAC, INC. ceased to exist on August 4, 2009, when
ELRAC LLC was formed and became successor-in-interest to ELRAC, INC. ELRAC, LLC is
moving for summary judgment for itself and ELRAC, INC. as successor in interest to ELRAC INC.
For simplicity, the court will refer to both entities collectively as "Enterprise."

negligence claim against Just Tires; and (3) claims for breach of implied warranty of merchantability and strict liability against Enterprise. Plaintiff also seeks to hold Enterprise liable for any negligence of Just Tires under an agency theory.

In June 2012, ELRAC and Just Tires filed motions for summary judgment [DE-37; DE-41]. ELRAC also filed a motion for sanctions [DE-44], arguing that Plaintiff had failed to comply with this court's May 20, 2013, Order [DE-36] which allowed ELRAC's previous motion to compel [DE-32] and ordered Plaintiff to provide ELRAC with responses to certain discovery requests.

Before the response time to these motions had expired, Plaintiff, through counsel, filed a motion seeking an extension of time, to and including July 8, 2013, to file responses to the motions. In the motion, Plaintiff's counsel represented that much of his file and work product concerning this action was stolen from his vehicle. On July 8, 2013, when the court still had not ruled on the motion to extend time, Plaintiff filed a substantive response [DE-49] to the motion for sanctions. She also filed a response [DE-50] to the motions for summary judgment; however, the response consisted almost entirely of her statement that she gives notice of her opposition to the pending motions for summary judgment. Plaintiff did not file a supporting memorandum of law in support of her opposition.

In an Order [DE-53] filed on July 10, 2013, the court allowed the motion for extension of time, and ruled that the Plaintiff's responses [DE-49; DE-50] were deemed timely filed. Out of an abundance of caution, the court also allowed Plaintiff until July 17, 2013, to file a memorandum of law in support of her opposition to the motions for summary judgment.

Thereafter, both ELRAC and Just Tires filed motions for sanctions [DE-56; DE-58] based on Plaintiff's failure to attend the scheduled mediation in this case. Plaintiff then filed a

2

memorandum [DE-60] in support of her opposition to ELRAC's motion for summary judgment, but did not file a memorandum with regard to her opposition to Just Tires' motion for summary judgment. She also, through her counsel, filed responses [DE-65; DE-66] to the motions for sanctions. The Clerk of Court submitted the motions for sanctions and motions for summary judgment to the undersigned on August 23, 2013. The next business day, on August 26, 2013, Plaintiff filed a motion for hearing [DE-73]. The court denied [DE-74] Plaintiff's motion for hearing, but allowed Plaintiff to file, on or before September 3, 2013, a motion for leave to file additional evidence, provided Plaintiff addressed, *inter alia*, when the additional evidence became known and available. Plaintiff thereafter filed a notice [DE-75] stating that "any information presented to the Court would not be new nor would it be deemed newly available," and for that reason, Plaintiff would not be filing a motion for leave to file additional evidence.

In this posture, the motions are ripe for disposition.

## II. SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, *Anderson*, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

3

(emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. *Anderson*, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to a judgment as a matter of law." *Custer v. Pan. Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993) (internal quotation marks omitted). Accordingly, a court may not allow a motion for summary judgment, even if unopposed, without considering the merits of the motion. *Id.*

**B.     Facts**

The following facts are accepted as true for purposes of the motion for summary judgment.

On October 28, 2006, Plaintiff rented a 2006 Chevrolet E25C cargo van ("the van") from an Enterprise location in New York. That day, Plaintiff drove the van to her house in New York without problem or incident. The following day, Plaintiff drove the van over 600 miles (taking 17 to 19 hours) from New York to Clayton, North Carolina, again without experiencing any problems. During her trip from New York to Clayton, Wilson transported a solid wood 2-drawer piece of furniture, approximately two and one-half feet high by three feet long by two feet deep.

On October 30, 2006, Plaintiff called the New York Enterprise location from which she rented the van and told the branch manager that, in her opinion, the rear tires were "bald." At the manager's suggestion, Plaintiff took the van to a Just Tires store in Clayton, North Carolina. Plaintiff did not report any other problems to Enterprise about the van.

Just Tires replaced the rear tires on the van that same day. After Just Tires replaced the rear

4

tires, when Plaintiff drove away she felt like the van was "swerving a little in the back . . . because there was nothing in the car." Pl. Dep. [DE-38-4] p. 122. She returned to Just Tires on October 31, 2006 and told a representative there that she "felt like swerving in the back of car." *Id.* p. 125. After Just Tires examined the vehicle, Plaintiff was told that there wasn't adequate air in the tires, and that Just Tires had added air to the front two tires.

After leaving Just Tires on October 31, 2006, as Plaintiff was driving the van back to New York, she lost control of the van while accelerating in heavy traffic, ran off the road into an embankment, hit a concrete culvert and injured her back.

## C. Opinion[2] witness evidence

Enterprise has proffered the opinion of Mark H. Nelson, a Registered Professional Engineer, a Certified Fire and Explosion Investigator, a Certified Vehicle Fire Investigator, and an ACTAR Accredited Reconstructionist. After performing a vehicle accident reconstruction and mechanical failure analysis on the van and the accident in this case, Mr. Nelson reached the following conclusions:

1. There were no defects or deficiencies in the steering or [suspension] of the subject Chevrolet Express that caused or contributed to the accident.
2. The damage and separation of the inner left tie rod end was consistent with the Chevrolet striking the culvert after it left the roadway.
3. The remaining suspension, steering and brake components were undamaged and working properly at the time of the inspection.
4. The four tires on the subject vehicle were in good condition, had sufficient tread depth and suitable tire inflation.
5. Retrieved data from the Chevrolet's airbag control module (ACM) indicated that [Plaintiff] was operating the vehicle 9 miles per hour (mph) above the posted speed limit prior to losing control of the vehicle.
6. Tire marks in the reviewed photographs indicate that the vehicle was in a sharp right turn with both wheels facing the same direction prior to leaving the roadway.

---

[2] The undersigned refers to "expert" witnesses as "opinion" witnesses.

7. The distance between the tire marks did not appear to change, which indicates that the vehicle was not in a yaw.

8. There is no physical evidence that there was any issue with the steering system prior to the accident.

9. Based on the physical evidence, scene photographs, and the police report the accident occurred due to improper steering input by [Plaintiff].

Nelson Report [DE-38-6] p. 4. Additionally, Defendant Enterprise proffers Mr. Nelson's

supplemental affidavit, tendered after Mr. Nelson reviewed Plaintiff's deposition testimony and

additional discovery in this matter. Therein, he avers the following:

2. On July 2, 2012, I received the plaintiff's EMS records from the date of the accident, October 31, 2006 . . . and the plaintiff's cellular telephone records from Sprint for October and November 2006 . . . .

3. The EMS records reflect that immediately following the accident, the plaintiff stated that "she steered her vehicle off the road to avoid making contact to other vehicles."

4. The EMS records also reflect that the plaintiff's accident occurred at 1:10 p.m. on October 31, 2006. The Sprint cellular telephone records reflect that the plaintiff made a call to Orlando, Florida at 1:09 p.m. and that that call lasted four mintues. It therefore appears that she was on her cellular telephone at the time of the accident despite the fact that she testified in deposition that she was not on her phone at all while she was driving either at the time of the accident or any time before it.

. . .

6. The EMS records and the plaintiff's cellular telephone records further support my opinion, as stated in my previous affidavit in this case, that the plaintiff's own improper steering input, most likely due to overcorrecting the steering to the right after a near collision on the left.

Nelson Suppl. Aff. [DE-55-1].

Plaintiff, for her part, did not designate any opinion witnesses, but in her Disclosure of

Retained Experts [DE-38-9], she stated that she would retain and utilize mechanic Ezra Hayes, Jr.,

whom she had identified in her Prediscovery Disclosures [DE-38-10]. In her Prediscovery

Disclosures, Plaintiff stated with regard to Mr. Hayes:

He examined and inspected the van that was involved in the collision. He

6

examined the vehicle before any parts were removed. He examined suspension parts removed from the vehicle. He observed unusual wear patterns in the parts and tires. He observed the damage to the vehicle. His testimony would be that it appeared there was a failure in a suspension part that would be consistent with the loss of control and path of the vehicle as described by the Plaintiff . . . .

Prediscovery Disclosures [DE-38-10] ¶ 4.

Subsequent to Plaintiff's Prediscovery and Disclosure of Retained Experts, Mr. Hayes signed

an affidavit on February 13, 2013, stating, in part, the following:

3. Upon request of . . . the attorney for the plaintiff . . . I examined and inspected the van that was involved in the collision that is the subject of his case ("the van") in 2007 at the Lincoln Mercury dealership on US 15-501 in Durham, North Carolina ("the inspection").
4. I have not been retained or asked to serve as an expert in this case.
5. I have not been asked to do anything related to the van since the inspection.
6. At the inspection, the only damage that I noticed on the van was a bent wheel and a broken ball joint.
7. I did not check or test the steering, the brakes, or the suspension of the van.
8. I do not have any opinion about when the ball joint on the van broke. Moreover, I do not have any opinion about whether the ball joint broke as a result of the collision with the culvert or by some other event.
9. I do not have any opinion about what cause the van to run off the road on October 31, 2006.
10. I do not have any opinion that any mechanical problem with the van caused it to become uncontrollable and run of the road on October 31, 2006.
11. Insufficient tread and unusual wear patterns on tires would not have caused the van to become uncontrollable and run off the road on October 31, 2006.
12. When I inspected the van at the inspection in 2007, I was not provided with, nor did I have, any information about the accident. I have now seen the accident report completed by Trooper R.C. Broadway dated October 31, 2006 ("accident report") and the speed that the van struck the culvert as reflected on the accident report.
13. The damage to the van that I saw at the inspection is consistent with, and could be explained by, the van striking a culvert as described in the accident report.

February 13, 2013 Hayes Aff. [DE-38-8]. Defendants have submitted the affidavit of Mr. Hayes

in support of their motions for summary judgment.

7

Plaintiff also submitted an affidavit from Mr. Hayes, executed more than five months after

his first affidavit. Therein, he again states that in 2007 he examined and inspected the van that is at

issue in this case. July 17, 2013 Hayes Aff. [DE-60-3] ¶ 4. He also states:

> 5. I offered my services as an expert at the time of the inspection and indicated my
> opinion regarding what I observed and what I believed to be the cause of the
> collision.
> 6. Mr. Perry asked me to review certain documents in his office, prepare a report
> and serve as an expert witness in the case.
> 7. I reviewed the collision report, photographs of the vehicle, the statements of
> Ms. Wilson as written on the accident report and as communicated to me by Mr.
> Perry, the Affidavit of Tony Tillman, and I considered the downloaded date from
> the blackbox regarding the vehicle speed and braking, as reported to me by the
> General Motors representative at the inspection site who downloaded the data.
> 8. At the time, I gave a verbal opinion to Mr. Perry that I believed the ball joint
> failed before the collision with the culvert.
> 9. I gave a verbal opinion to Mr. Perry that the van ran off the road as a result of
> the ball joint failure on October 31, 2006.
> 10. In 2012 and 2013, Mr. Perry contacted me about preparing a report of my
> findings and opinion.
> 11. I never prepared the report and when Mr. Perry contacted me telling me that
> the deadline was fast approaching, I was out of town.
> 12. At a later time, I told Mr. Perry that I could not say with certainty why the van
> crashed or whether the ball joint was broken because of the impact, and he told
> me he could not retain me or use me as his expert.

13. I eventually told Mr. Perry that I had signed an affidavit that had been presented to me by
another attorney.

*Id.*

No other "opinion" witness testimony is offered in this case.

## D.  Analysis

Both Enterprise and Just Tires move for summary judgment on all of Plaintiff's claims.

Enterprise contends that it is entitled to judgment on Plaintiff's claims because (1) there is no

evidence showing there was a defect in the van; (2) no implied warranty of merchantability or

implied warranty of fitness for a particular purpose existed; (3) there is no evidence showing that

8

Enterprise breached a duty of care to Plaintiff, and (4) there is no evidence of agency between Enterprise and Just Tires. For its part, Just Tires argues that (1) there is no evidence of a breach of contract between Just Tires and Plaintiff; (2) there is no evidence that the tires it installed on the van were defective, precluding a breach of warranty claim, and (3) there is no evidence that Just Tires breached any duty to Plaintiff. The court will examine each of Plaintiff's claims in turn.

## 1. Breach of Contract/Breach of Warranty

Plaintiff's first claim for relief is styled "breach of contract/breach of warranty." Compl. [DE-1-1] p. 2. The allegations in the complaint, however, make clear that the claim is for breach of implied warranty of fitness for a particular purpose and implied warranty of merchantability. Compl. [DE-1-1] ¶¶ 10-11, 15-16. Moreover, the allegations in the complaint make clear that claim for relief is asserted against Enterprise. Consequently, the court will focus its analysis on those theories as applied to Defendant Enterprise, and Defendant Just Tire's Motion for Summary Judgment [DE-41] is ALLOWED as to Plaintiff's first claim for relief.

As a preliminary matter, because this court's jurisdiction over this case is grounded in diversity, the court must apply the conflict of law rules of North Carolina, the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Generally, parties' contractual choice of law provisions are enforceable in North Carolina, so long as the parties "had a reasonable basis for their choice and the law of the chosen State does not violate a fundamental public policy of [North Carolina] or otherwise applicable law." *Sawyer v. Market Am., Inc.*, 190 N.C. App. 791, 794, 661 S.E.2d 750, 752 (2008) (quotation omitted). Additionally, Section 205 of the North Carolina Uniform Commercial Code provides, in pertinent part, that "when a transaction bears a reasonable relation to this State and also to another state or nation the parties may agree that the law

9

either of this State or of such other state or nation shall govern their rights." N. C. Gen. Stat. § 25-1-301(a).

In this case, Plaintiff's rental agreement with Enterprise provides, in part, the following:

22. Choice of Law. All terms and conditions of this Agreement shall be interpreted, construed, and enforced pursuant to the laws of the State where this Agreement is executed by Renter without giving effect to the conflict of laws provisions of such State.

Rental Agreement [DE-38-2]. There is no dispute that the Rental Agreement was signed in New York by Plaintiff. The implied warranty claims asserted by Plaintiff against Defendant Enteprise necessarily arise out of the Rental Agreement. Accordingly, the substantive law of New York governs Plaintiff's warranty claims against Defendant Enterprise.

The New York Uniform Commercial Code recognizes the implied warranties of merchantability and fitness for a particular purpose in leases of goods, but permits parties to disclaim those warranties in their lease agreements. *See* N.Y. U.C.C. Law § 2-A-214.[3] Specifically, to effectively exclude an implied warranty of merchantability, "the language must mention 'merchantability,' be by a writing, and be conspicuous." N.Y. U.C.C. Law § 2-A-214(2). Similarly, to effectively exclude an implied warranty of fitness for a particular purpose, the language must be in writing, conspicuous, "and states, for example, 'there is no warranty that the goods will be fit for a particular purpose.'" *Id.* Additionally, New York law provides that "unless the circumstances

_____

[3] As Enterprise observes, Plaintiff specifically relies on the North Carolina Uniform Commercial Code Article 2-Sales, N.C. Gen. Stat. §§ 25-2-314 and 25-2-315 for her claims of breach of the implied warranty of merchantability and breach of implied warranty of fitness for a particular purpose. Article 2 of the Uniform Commercial Code, whether under North Carolina or New York law, is inapplicable to the facts as alleged here because Plaintiff's transaction with Enterprise was a rental, not a sale, and no title passed. *See* N.Y. U.C.C. Law § 2-A-102; N. C. Gen. Stat. 25-2A-102. Accordingly, the court has examined Plaintiff's first claim of relief under the portion of the Uniform Commercial Code applicable to leases.

10

indicate otherwise, all implied warranties are excluded by expressions like 'as is,' or 'with all faults,'

. . . if in writing and conspicuous." N.Y. U.C.C. Law § 2-A-214(3)(a).

The Rental Agreement signed by Plaintiff specifically provides:

> 2. <u>Ownership/Vehicle Condition/Warranty Exclusion</u>. . . . Renter agrees Renter received Vehicle in good physical and mechanical condition. RENTER IS RENTING VEHICLE "AS IS" AND HAS HAD AN ADEQUATE OPPORTUNITY TO INSPECT VEHICLE AND ITS OPERATION BEFORE LEAVING OWNER'S PREMISES. OWNER EXCLUDES ALL WARRANTIES, BOTH EXPRESS AND IMPLIED, WITH RESPECT TO THE VEHICLE, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

Rental Agreement [DE-38-2] ¶ 2. This language satisfies all the applicable requirements for an effective warranty exclusion under the New York Uniform Commercial Code. The exclusions were in writing and conspicuous (being in all capital letters) and mention merchantability. Additionally, the exclusion features the prominent statement that renter is renting the applicable vehicle "as is." Accordingly, Enterprise expressly disclaimed all warranties, including the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. Enterprise's Motion for Summary Judgment [DE-37] is therefore ALLOWED as to Plaintiff's first claim for relief to the extent it alleges breach of any implied warranty.[4]

## 2. Negligence of Enterprise

Plaintiff's first claim for relief may also be read as asserting a claim of negligence against Enterprise. Specifically, Plaintiff alleges that Enterprise "failed to adequately inspect or carry out quality control" and that the van was negligently maintained and/or negligently inspected . . . and or repaired." Compl. [DE-1-1] § 2, ¶ 17a & b.

---

[4] This result would be the same under North Carolina law. *See* N.C. Gen. Stat. § 25-2A-214 (setting forth the same requirements for valid exclusions for warranties as provided under New York law).

Plaintiff's claim for negligence, whether under New York law or North Carolina law,[5] fails. Under North Carolina law, a products liability action grounded in negligence requires proof that (1) the product was defective at the time it left the control of the defendant, (2) the defect was the result of defendant's negligence, and (3) the defect proximately caused plaintiff damage." *Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.*, 138 N.C. App. 70, 75, 530 S.E.2d 321, 326 (2000); *see also Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc.*, No. 5:06-CV-160-D, 2011 WL 1262159, at *5 (E.D.N.C. March 31, 2011), *aff'd*, 477 F. App'x 981 (4th Cir. 2012). Similarly, under New York law, "[w]hether the action is pleaded in strict products liability, breach of warranty, or negligence, it is a consumer's burden to show that a defect in the product was a substantial factor in causing the injury and . . . that the defect complained of existed at the time the product left the . . . entity in the line of distribution being sued." *Tardella v. RJR Nabisco, Inc.*, 178 A.D. 2d 737, 737, 576 N.Y.S. 2d 965, 966 (N.Y. App. Div. 1991), *quoted in Donovan v. Centerpulse Spine Tech. Inc.*, 416 F. App'x 104, 106 (2nd Cir. 2011).

Here, as Enterprise notes, there is no evidence that there were any defects with the van. Although Plaintiff alleges in the complaint that there were problems with the braking, suspension and/or tie rod on the van, she has proffered no evidence showing the existence of any of those defects, and more importantly, that those defects existed when Enterprise provided the van for her use. Instead, the undisputed evidence shows that there were no defects in the van's suspension,

---

[5] Although Enterprise argues that New York law applies to this claim, it is not apparent to the court that the choice of law provision in the rental agreement applies to a non-contractual tort claim. In any event, the result is the same under either New York or North Carolina law. *See Caper Corp. v. Wells Fargo Bank, N.A.,* No. 7:12-CV-357-D, 2013 WL 4504450, at *5 (E.D.N.C. Aug. 22, 2013) (explaining that because the defendant's allegedly tortious conduct occurred in North Carolina, North Carolina law would apply, but because there was "not a material conflict between North Carolina law and New York law" the court need not decide the issue).

steering and brake components. Nelson Report [DE-38-6] p. 4. Nor, at the time of the accident, were there any defects with the van's tires. *Id.* Although post-accident inspections of the van revealed that the inner left tie rod was damaged, the undisputed evidence of record shows that the observed damage "was consistent with [the van] striking the culvert after it left the roadway." *Id.*

Even if this court assumes there was some sort of defect with the van, there is no evidence that the alleged defect caused Plaintiff's injuries. Plaintiff argues the following:

> Plaintiff contends that the evidence of her complaints regarding the handling of the vehicle, the subsequent loss of control and the collision within a short time of her last complaint, should be sufficient evidence to survive a motion for summary judgment. Plaintiff contends that her reported observations and complaints prior to the collision, and the circumstances of her collision are sufficient to create a genuine dispute as to what proximately caused the loss of control and the resulting collision.

Pl.'s Opp. to Mot. for Summ. J. [DE-60] p. 2. In sum, Plaintiff is arguing that the fact she was in an accident is enough to sustain her negligence claim. This, of course, is not enough to establish causation. *See Gilks v. Olay Co., Inc.*, 30 F.Supp.2d 438, 444 (S.D.N.Y. 1998) ("Mere use of the product and subsequent injury, however, are not a sufficient basis from which to infer causation."); *Smith v. Squire Homes, Inc.*, 38 A.D. 2d 879, 329 N.YS.2d 243 (4th Dep't 1972) ("When the precise cause of the accident is left to conjecture and may be as reasonably attributed to a condition for which no liability attaches as to one for which it does, then the plaintiff is not entitled to recover and the evidence should not be submitted to the jury."). *See also Carlton v. Goodyear Tire & Rubber Co.*, 413 F. Supp. 2d 583, 588 (M.D.N.C. 2005) ("[I]t is critical to the outcome of the product liability negligence claims in this case to note that a plaintiff cannot have a fact finder infer manufacturer negligence from a product defect which has been inferred from a product malfunction . . . . In other words, a plaintiff may not prove negligence by stacking inference upon inference.

13

Negligence may not be inferred without actual evidence of a defect.") (quotation and citations omitted). Here, where the record is devoid of any direct evidence of any defect in the van, and where the record is devoid of any negligent action or omission on the part of Enterprise, Plaintiff's claim for negligence is DISMISSED.

## 2. Negligence of Just Tires

In Plaintiff's second claim for relief, she alleges that Defendant Just Tires was negligent by failing to diagnose mechanical defects with the van, specifically "the braking, tie rod, and suspension problem that caused Plaintiff to be unable to steer the van." Compl. [DE-1-1] § 3, ¶¶ 2-6. This claim must also be dismissed.

Under North Carolina law,[6] "to prevail in a negligence action, [a plaintiff] must offer evidence of the essential elements of negligence: duty, breach of duty, proximate cause, and damages." *Camalier v. Jeffries*, 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995). Generally, a service provider only has a duty to exercise reasonable care in performing the services it agreed to undertake. *See Boss v. Nissan N. America, Inc.*, 228 F. App'x 331, 335 (4th Cir. 2007 ) (per curiam) (unpublished) (determining that two vehicle service providers could not be held liable, under Maryland law, for injury caused by failing to detect contamination in steering fluid of car where the service providers ever agreed to perform such a service). Here, the undisputed evidence is that Plaintiff only asked Just Tires to inspect and change the rear tires. Pl. Dep. [DE-38-4] pp. 122, 238. There is no evidence that Just Tires agreed to undertake the performance of any other duties.

---

[6] In North Carolina, courts traditionally apply the rule of *lex loci delicti* to tort claims. *See Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 853-854 (1998). "For actions sounding in tort, the state where the injury occurred is the considered the situs of the claim." *Id.* at 335, 368 S.E.2d at 854. Here, there is no dispute that Plaintiff's injury occurred in North Carolina.

Moreover, even if there was evidence that Just Tires undertook the duty to fully inspect the van's braking and suspension systems and the tie rod, there is no evidence before the court that any of those components of the van caused the accident and Plaintiff's injuries. In *Lavelle v. Schultz*, 120 N.C. App. 857, 463 S.E.2d 567 (1995), the North Carolina Court of Appeals explained that "[t]he omission or failure to perform a duty cannot constitute a proximate cause of an accident unless performing the omitted act would have prevented the accident." *Id.* at 861, 463 S.E.2d at 570 (citing *Wilson v. Camp*, 249 N.C. 654, 107 S.E.2d 743 (1959)). Accordingly, in that case, where the plaintiff stated in an affidavit stating that a tree located on a defendant's property "was a significant cause" of a car collision, but the evidence of record established that the collision was the result of another driver's error, the Court of Appeals affirmed the trial court's grant of summary judgment in the defendant property owner. In so doing, the Court of Appeals observed that the evidence proffered by Plaintiff–the sole statement in her affidavit–was "conclusory and fail[ed] to point to specific facts to support each element of negligence, particularly with regard to the issue of proximate cause" and that there was "nothing in the record which establish[ed] that the absence of the tree would have prevented this accident." *Id.* at 5862, 463 S.E.2d at 571. Similarly, in this case, the only evidence before the court is that Plaintiff's improper steering input caused the accident, and her resulting injuries. Nelson Report [DE-38-6] p. 4 ("Based on the physical evidence, scene photographs, and the police report the accident occurred due to improper steering input by [Plaintiff]."); *see also* Pl. Dep. [DE-38-4] pp. 236, 238 (testifying that she did not know what caused the accident). Consequently, Plaintiff's negligence claim fails, and Just Tire's Motion for Summary Judgment [DE-41] is ALLOWED as to Plaintiff's second claim for relief.

15

### 3. Breach of Implied Warranty of Merchantability by Enterprise

Plaintiff's third claim for relief repeats much of the same allegations asserted in support of her first claim for relief. Accordingly, for the reasons already stated by this court, Plaintiff's claim for implied warranty of merchantability against Enterprise fails, and Enterprise's Motion for Summary Judgment [DE-37] is therefore ALLOWED as to Plaintiff's third claim for relief.

### 4. Strict Liability–Enterprise

In Plaintiff's final claim for relief, she alleges that Enterprise should be liable under a theory of strict liability. Under either New York or North Carolina law, this claim must be dismissed.

First, North Carolina law does not recognize strict liability in product liability cases. *See* N.C. Gen. Stat. § 99B-1.1 ("There shall be no strict liability in tort in product liability actions."); *DeWitt v. Eveready Battery Co., Inc.*, 355 N.C. 672, 688, 565 S.E.2d 140, 150 (2002) ("North Carolina has not adopted the law of strict liability in products liability actions."). Second, under New York law, "[i]n a products liability case, if a defendant comes forward with any evidence that the accident was not necessarily attributable to a defect, then the plaintiff must then produce direct evidence of a defect to defeat the motion [for summary judgment]." *Rabon-Willimack v. Robert Mondavi Corp.*, 905 N.Y.S.2d 190, 192, 73 A.D. 3d 1007, 1008 (App. Div. 2010) (internal quotations omitted). Here, Enterprise has come forward with evidence showing that (1) there were no defects in the van at the time of the accident and (2) Plaintiff's own improper steering likely led to the accident. *See* Nelson Report [DE-38-6] p. 4. In response, Plaintiff has failed to present direct evidence that a defect existed in the van when she obtained it from Enterprise or any evidence that excluded other causes for the van's failure that were not attributable to Enterprise. Accordingly, she has failed to meet her burden of proffering admissible evidence in support of the strict product

16

liability claim, and Enterprise's Motion for Summary Judgment [DE-37] is allowed as to Plaintiff's fourth claim for relief.

## III. MOTIONS FOR SANCTIONS

Enterprise and Just Tires also have filed motions for sanctions [DE-44, DE-56, DE-58] against Plaintiff for her failure to comply with the court's May 20, 2013 Order [DE-36] and her failure to appear at the June 24, 2013 mediation in this matter.

### A. Procedural History Regarding Motions for Sanctions

Enterprise served its first set of interrogatories and requests for production of documents on Plaintiff on December 12, 2012. Plaintiff responded to the discovery requests via e-mail on January 28, 2013. Plaintiff's responses were incomplete, in a format that was redlined (tracking the changes in the word processing document) and were unsigned by counsel or Plaintiff. Counsel for Enterprise contacted Plaintiff's counsel on January 29, 2013, informing Plaintiff's counsel of the deficiencies in the responses and stating that he assumed the final version was in the mail. On March 14, 2013, counsel for Enterprise sent a letter to Plaintiff's counsel again outlining the deficiencies in Plaintiff's discovery responses, and noting that, as of that date, Plaintiff had not yet provided any final, signed discovery responses or any additional documents that the responses stated were to be sent.

Plaintiff provided Enterprises with some additional responsive documents on March 26, 2013, and April 8 2013, but did not provide signed responses to its discovery requests, and did not produce the documents requested by Enterprise Request for Production Nos. 6-8, 10, 15, 16, 21, 30, 37 and 39. Accordingly, Enterprise filed a motion to compel, asking the court to compel Plaintiff to provide complete, signed responses to the interrogatories and production of the requested documents.

United States Magistrate Judge Webb allowed Enterprise's motion to compel in an order

17

filed May 20, 2013 [DE-36], wherein he ordered that Plaintiff had ten days to provide Enteprise with full and complete, signed and verified responses to Enterprise's first set of interrogatories and first set of requests for production, without objection, with the exception of Request for Production Nos. 6 and 39. Judge Webb specifically warned that "[f]ailure by Plaintiff to provide Enterprise with full and complete, signed and verified responses to Enterprise's first set of interrogatories and first set of requests for production within ten days from entry of this order will result, upon motion by Enterprise, in the imposition of sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure." May 20, 2013 Order [DE-36] p. 5.

Enterprise represents that on May 29, 2013, Plaintiff's counsel emailed a signed verification for Plaintiff's responses to Enterprise's discovery requests, along with a non-redlined version of her responses to the Interrogatories. Enterprise further represents that Plaintiff's counsel produced the identical Requests for Production that were previously produced on January 28, 2013, along with a one-page New York Driver Record Report and several images from imaging studies. Enterprise asserts that Plaintiff has only produced a portion of the imaging studies. Additionally, Enterprise asserts that Plaintiff failed to produce:

- a.    Her tax returns from 2001 to the present (Request for Production No. 7).
- b.    Her medical records and bills from Garner EMS and Dr. Sam Dalvi, a Rheumatologist at Duke University Hospital (Request for Production No. 8).
- c.    Her full employment files for the last ten years (Request for Production No. 15)
- d.    Any of her pharmacy records (Request for Production No. 16).
- e.    Her Social Security Administration file (Request for Production No. 21); and
- f.    Documents reflecting payments made by insurance companies or other third parties of all health related bills that she alleges she incurred as a result of the incidents alleged in the complaint (Request for Production No. 30).

Mot. for Sanctions [DE-45] p. 4. Plaintiff's counsel, in an email sent on May 30, 2013, admitted that

not all the required information could be obtained by the deadline "but it is still coming." May 30, 2013, Email [DE-44-1]. Enterprise subsequently filed a motion for sanctions [DE-49].

In response to the motion for sanctions, Plaintiff's counsel explained that as soon as he had notice–via the motion for sanctions–that counsel for Enterprise did not receive all of the radiology images, he hand-delivered a CD containing all of the images to Enterprise's counsel. He further explains that he hand-delivered the Garner EMS records on July 2, 2013. With regard to the remaining documents, counsel states that "plaintiff reports that she has no copies of tax returns or W2 forms other than the W2 forms that have been provided" and she has "no copies of records from Dr. Sam Dalvi." Resp. [DE-49] p. 2. Plaintiff's counsel further represents that he "has produced every document that has come into his possession since the Court ordered such production" and that Plaintiff's ability to respond has been hampered by her move to California, which in turn was prompted by health concerns.

While Enterprise's motion for sanction was pending, it filed another motion for sanctions [DE-56], this time based on Plaintiff's failure to appear at mediation. Just Tires followed suit [DE-58]. It is undisputed that counsel for all the parties conferred and scheduled mediation for June 24, 2013, which was the first available date for the mediator and all parties. This date was confirmed by a letter dated May 23, 2012, addressed to all counsel in this case, sent by the coordinator for the mediator.

On June 3, 2013, however, Plaintiff's counsel informed Enterprise's counsel that he was not sure Plaintiff would appear at mediation. According to Enterprise, its counsel asked Plaintiff's counsel to advise whether Plaintiff was refusing to appear at mediation so that time and expense could be saved. After not hearing more from Plaintiff's counsel, Enterprise's counsel against

19

contacted Plaintiff's counsel on Tuesday, June 18, 2013, and Thursday, June 20, 2013, to inquire about whether Plaintiff was intending to attend the mediation. Plaintiff's counsel informed Enterprise's counsel that he did not know whether Plaintiff would appear. Just Tires's counsel also contacted Plaintiff's counsel on June 20, 2013, about Plaintiff's attendance at mediation, and also was told by Plaintiff's counsel that he was unsure whether Plaintiff would appear.

A representative for Just Tires traveled from Ohio to Raleigh on Sunday, June 23, 2013, to be present for the mediation. On June 24, 2013, counsel for Just Tires, Enterprise, and representatives for both defendants appeared at the time and place confirmed for mediation. Minutes before mediation was scheduled to begin at 10:00 a.m., Plaintiff's counsel informed counsel for the defendants that Plaintiff apparently was not attending because he had instructed her to arrive at 9:00 a.m. Plaintiff's counsel also informed opposing counsel and the mediator that he had informed Plaintiff of the date and time of the mediation, but she had informed him that she would not be appearing at anything for this case until August 2013. The mediation was not held.

In response to the motions for sanctions, Plaintiff's counsel states the following:

> Plaintiff was advised that her attendance was required at the mediated settlement conference scheduled on June 24, 2013. Plaintiff was never advised by the undersigned to not appear. Plaintiff was in California to seek medical care and be with family who could assist her.
> Counsel has requested that plaintiff provide additional documentation as to her current medical condition and/or any other impairment while she was in California that would have impaired her ability to travel to North Carolina. None has been provided.
> Counsel for Plaintiff would contend that Plaintiff's failure to attend mediation under the circumstances now faced by plaintiff, would make an award of expenses and attorney fees unjust. Counsel for plaintiff would further contend that some appropriate sanction short of dismissal would be appropriate.

Pl.'s Response [DE-66] pp. 1-2.

20

## B. Analysis

A court has discretion to impose sanctions, up to and including dismissal, when a party fails to comply with discovery orders. *See* Fed. R. Civ. P. 37(b);*Mutual Fed. Sav. & Loan Ass'n v. Richards & Assocs.*, 872 F.2d 88, 92 (4th Cir. 1989). The sanctions authorized by Rule 37(b) include "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or introducing designated matters in evidence," "striking pleadings in whole or in part," "rendering a default judgment against the disobedient party," or "treating as contempt of court the failure to obey any order." Fed. R. Civ. P. 37(b)(2)(A)(ii), (iii), (v), (vii). Additionally, Rule 37(b) provides that "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Whether to impose sanctions pursuant to Rule 37 is a matter within the court's wide discretion. *Mut. Fed. Sav. & Loan v. Richards & Assocs.,* 872 F.2d 88, 92 (4th Cir.1989). When, however, "the sanction involved is judgment by default, the district court's 'range of discretion is more narrow.' " *Buckner v. United Parcel Service, Inc.,* 5:09–CV–411–BR, 2012 WL 1596726, at *8 (E.D.N.C. May 7, 2012) (quoting *Mut. Fed. Sav. & Loan,* 872 F.2d at 92).

Before entering a default judgment under Rule 37 as a sanction, the court must consider four factors: "(1) whether the noncomplying party acted in bad faith; (2) the degree of prejudice suffered by the other party or parties as a result of the failure to comply; (3) the deterrence value of dismissal as a sanction for noncompliance; and (4) the efficacy of a less drastic sanction." *Malhotra v. KCI Tech., Inc.,* 240 Fed. App'x 588, 590 (4th Cir.2007) (citing *Mut. Fed. Sav. & Loan,* 872 F.2d at 92); The law requires the court to impose sanctions less severe than default judgment if appropriate.

21

*Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 41 (4th Cir.1995).

Additionally, the Local Rules of this court provide for sanctions where a person fails to attend a mediated settlement conference without good cause. Local ADR Rule 101.1d(h). Specifically, the court may impose on the person "any sanction authorized by Fed. R. Civ. P. 37(b) and any other lawful sanction, including, but not limited to, the imposing of the cost of attorney's fees, mediator's fees, and expenses of persons incurred in attending the conference. *Id.*

Here, there is no dispute that Plaintiff failed to timely and fully comply with Judge Webb's May 20, 2013, Order, and that she failed to attend the scheduled mediation settlement conference in this case. There is no evidence in the record that would allow the court to find that she had good cause to attend the mediated settlement conference. Thus, the issue for the court is what sanction, if any, is appropriate for Plaintiff's failures.

Because the court is dismissing the entirety of Plaintiff's claims on the basis of Defendants' motions for summary judgment, the court does not perceive that any of the sanctions enumerated in Rule 37(b)(2)(A) to be appropriate. The court does, however, find it appropriate to award Enterprise the reasonable expenses, including attorney's fees, caused by Plaintiff's failure to comply with the May 20, 2013, Order. Although the court is sympathetic to Plaintiff's medical conditions, she chose to initiate this lawsuit, and therefore, at bottom, she is responsible for participating in the action, including providing relevant documents to her attorney to produce in response to discovery requests. Accordingly, Enterprise's motion for sanctions [DE-44] is ALLOWED, and Defendant Enterprise is entitled to the reasonable expenses it incurred in bringing the motion to compel. Enterprise shall file an affidavit, setting out such expenses, including attorney's fees, within 14 days of this order. Any such affidavit, or additional filing if necessary, shall demonstrate why such a fee is reasonable

22

for the time and labor expended, the customary fee for like work, and the experience and ability of the attorney(s) rendering such services. Plaintiff may file a response, if any, within seven days after service of the affidavit. The court will thereafter issue an order setting the amount due.

Additionally, the Motions for Sanctions [DE-56; DE-58] filed by Enterprise and Just Tires are also ALLOWED. The court finds it appropriate to order Plaintiff to pay all mediator fees in this matter, along with the expenses incurred by Defendants Enterprise and Just Tires, including attorney's fees and the travel expenses of their representatives, by attending the June 24, 2013 mediation. Defendants Enterprise and Just Tires shall therefore file affidavits, setting out such expenses, within 14 days of this order. Any such affidavit, or additional filing if necessary, shall demonstrate why such an attorney fee is reasonable for the time and labor expended, the customary fee for like work, and the experience and ability of the attorney(s) rendering such services. Plaintiff may file a response, if any, within seven days after service of the affidavit. The court will thereafter issue an order setting the amount due.[7]

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motions for Summary Judgment [DE-37, DE-41] are ALLOWED, and all of Plaintiff's claims are DISMISSED.

Additionally, the Defendants' Motions for Sanctions [DE-44, DE-56, DE-58] are ALLOWED. Defendant Enterprise shall file an affidavit, setting out the expenses it incurred in

---

[7] Just Tires has previously filed the affidavit of its representative, Nancy C. Cody [DE-59-4]. That affidavit did not set forth explicitly the costs Ms. Cody incurred, and the quality of the printout attached to Ms. Cody's affidavit has prevented the court from ascertaining which charges on the printout are related to Ms. Cody's travel to the mediation, and the amount of such charges. Just Tires should, therefore, file a more detailed affidavit from Ms. Cody, along with a more legible copy of the supporting documentation.

23

filing the Motion for Sanctions [DE-44], including attorney's fees, within 14 days of this order. Any such affidavit, or additional filing if necessary, shall demonstrate why such a fee is reasonable for the time and labor expended, the customary fee for like work, and the experience and ability of the attorney(s) rendering such services. Additionally, Defendants Enterprise and Just Tire shall file affidavits detailing the expenses incurred by them, including attorney's fees and the travel expenses of their representatives, by attending the June 24, 2013 mediation. Plaintiff may file a response, if any, within seven days after service of the affidavits. The court will thereafter issue an order setting the amount due.

The Clerk of Court is DIRECTED to remove this matter from the court's pretrial and trial calendars.

SO ORDERED.
This the _10_ day of October, 2013.

James C. Fox

James C. Fox
Senior United States District Judge

24